IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ALTON R. SHAW,                           )
                                         )
                    Plaintiff,           )
                                         )
        v.                               )        Case No. 09-3178-JWL
                                         )
SHELTON RICHARDSON, et al                )
                    Defendants.          )
                                         )
_____ )


# MEMORANDUM AND ORDER


Plaintiff Alton Shaw brought this action *pro se* against various individuals

employed at a private prison in Leavenworth, Kansas run by the Corrections Corporation

of America ("CCA").[1]  Mr. Shaw alleges violations of his First, Eighth and Fourteenth

Amendment rights arising from an altercation with prison officials on August 9th, 2008

and the subsequent disciplinary hearing on August 27th, 2008.  Mr. Shaw brings suit

pursuant to the Supreme Court's decision in *Bivens v. Six Unknown Named Agents of the

Federal Bureau of Narcotics,* 403 U.S. 388 (1971) as well as 42 U.S.C. § 1983.  The

matter is presently before the Court on a Motion to Dismiss filed by defendants Shelton

Richardson, Robert Mundt, Ken Daugherty, Bruce Roberts, Kristen Monroe, Anthony

Reutlinger, Rhonda Allen, and Donald Quinn (doc. #45).  Also before the Court is a

_____

[1] CCA is a private Maryland corporation which houses and detains federal prisoners
pursuant to a contract with the United States Marshals Service ("USMS").

Motion for Summary Judgment filed by the plaintiff (doc. #35) and a Motion for Default Judgment (doc. #51) against defendants Jeff Grimes, Jeff Zilmer, Joshua Bagby, and Evan Herken.  For the reasons explained below, the Court grants in part and denies in part the defendants' Motion to Dismiss.  It construes the motion as one for judgment on the pleadings, and grants it as relates to Mr. Shaw's claim of excessive force, based upon Mr. Shaw's failure to properly exhaust administrative remedies.  The Court also grants the motion with regard to Mr. Shaw's claim under the First Amendment and his apparent claim for intentional or negligent infliction of emotional distress based upon the events of August 9th.  However, with regard to Mr. Shaw's claim under the Fourteenth Amendment, the Court finds that the defendants have not satisfied their burden of demonstrating that Mr. Shaw failed to exhaust administrative remedies, and also concludes that Mr. Shaw has alleged sufficient facts to survive a motion for judgment on the pleadings.  Thus, the Court denies the motion as to that claim.  The Court also concludes that Mr. Shaw has adequately pled a claim that he was denied medical treatment in violation of the Eighth Amendment.  Moreover, as to any of the claims inadequately pled, the Court grants Mr. Shaw leave to amend his complaint to allege any additional facts that may exist in support of his claims.  Additionally, the Court denies Mr. Shaw's Motion for Summary Judgment but grants Mr. Shaw's Motion for Default Judgment.  Finally, the Court notes that Mr. Shaw previously requested that counsel be appointed (doc. #3).  The Court denied his request at that time, leaving the matter open, however, for reconsideration (doc. #18).  Having reviewed in further detail the

complexities involved in Mr. Shaw's claims, the Court finds that the appointment of counsel is warranted. Therefore, the Court directs the magistrate judge to appoint counsel for Mr. Shaw.


I.  Background[2]

On August 9th, 2008, Assistant Shift Supervisor Jeff Zilmer confiscated Mr. Shaw's radio, leading to a verbal protest by Mr. Shaw. Mr. Shaw's hands were restrained, and Mr. Zilmer began to escort Mr. Shaw to segregation.[3] At some point along the way, Mr. Zilmer allegedly took Mr. Shaw down to the ground, slamming his head against the floor. According to Mr. Shaw, correctional officers Joshua Bagby and Donald Quinn restrained him while Mr. Zilmer punched him in the face and head and sprayed mace into his face. Mr. Shaw contends that this behavior constituted an excessive use of force in violation of the Eighth Amendment. He also alleges that he was denied medical treatment for injuries he received as a result of the incident. He claims that he received cuts and bruises on his hands and ankles from the restraints used and also bruises on his face and knots on his head from Mr. Zilmer's excessive use of force. He made numerous complaints, but alleges that he was not given medical treatment until

---

[2] Consistent with the well-established standard for evaluating a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), and therefore a motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c), the Court accepts as true all well pleaded factual allegations in plaintiffs' complaint.

[3] According to the disciplinary report that Mr. Shaw attached to his complaint as "exhibit F," Mr. Shaw was ordered to submit to hand restraints, and complied, but then became combative while being escorted to segregation.

after 5 pm on August 10th.  He also contends that he was "not given a proper shower" after mace was sprayed into his face.

A disciplinary hearing was subsequently held to assess whether Mr. Shaw committed the offense of "hindering" during the incident on August 9th.  To represent him, Mr. Shaw was appointed a staff advisor, Mr. Daniels.  Defendant Kristen Monroe served as the Disciplinary Officer for Mr. Shaw's hearing.  Prior to the hearing, Mr. Shaw requested that he be allowed to question witnesses at the detention hearing. However, Mr. Shaw was not permitted to do so.  He also alleges that he was not permitted to "show that he had done nothing wrong," and that Mr. Daniels did not use the statement Mr. Shaw had given in his defense during the disciplinary hearing.  He also claims that certain officials falsified statements they made concerning the August 9th incident, and that it was brought to the attention of Disciplinary Officer Monroe that there were conflicting statements made by officers.[4]  Nonetheless, Ms. Monroe concluded that Mr. Shaw had committed the offense of "hindering," an offense for which Mr. Shaw was placed in segregation.  Mr. Shaw consequently asserts that he was denied due process in

---

[4]In their memorandum accompanying the Motion to Dismiss, the defendants assert that Mr. Daniels informed Disciplinary Officer Monroe that he saw discrepancies in the witness statements, that Monroe informed her own superiors of these discrepancies, that this led to a full investigation by Deborah Kinney, and that the discrepancies ultimately were found not to impact upon the determination that Mr. Shaw hindered the officials. However, to establish the veracity of these assertions, the defendants rely upon materials outside of the pleadings and exhibits attached thereto, and, as explained below, the Court may not consider such extraneous materials in analyzing the defendants' motion.

violation of the Fourteenth Amendment and deprived of his rights under the First
Amendment.


II.  Analysis

A.  Motion to Dismiss

Defendants Shelton Richardson, Robert Mundt, Ken Daugherty, Bruce Roberts,
Kristen Monroe, Anthony Reutlinger, Rhonda Allen, and Donald Quinn move to dismiss
Mr. Shaw's complaint under Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction
and under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be
granted.  However, these defendants have already filed an answer, and they therefore
should have made their motion under Fed.R.Civ.P. 12(c), for judgment on the pleadings.
*See Jacobsen v. Deseret Book Co*., 287 F.3d 936, 941 n. 2 (10th Cir. 2002).  The Court
will consequently construe their motion as one for judgment on the pleadings under Rule
12(c).

1.  Standards

A motion for judgment on the pleadings under Rule 12(c) is analyzed using the
same standard that applies to a Rule 12(b)(6) motion to dismiss for failure to state a
claim, *Park Univ. Enters., Inc. v. Am. Cas. Co.*, 442 F.3d 1239, 1244 (10th Cir. 2006).
The Court will dismiss a cause of action for failure to state a claim only when the factual
allegations fail to "state a claim to relief that is plausible on its face," *Bell Atlantic Corp.
v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974 (2007), or when an issue of law is

dispositive, *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). The complaint need not contain detailed factual allegations, but a plaintiff's obligation to provide the grounds of entitlement to relief requires more than labels and conclusions; a formulaic recitation of the elements of a cause of action will not do. *Bell Atlantic*, 550 U.S. at 555. The court must accept the facts alleged in the complaint as true, even if doubtful in fact, *id.*, and view all reasonable inferences from those facts in favor of the plaintiff, *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006). Viewed as such, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic*, 550 U.S. at 555 (citations omitted). The issue in resolving a motion such as this is "not whether [the] plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). Moreover, a "Rule 12(c) motion is confined to the pleadings and to any documents attached as exhibits to the pleadings, including the defendant's answer." [5] *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001).

When, as here, a plaintiff is proceeding *pro se*, the court construes his or her pleadings liberally and holds the pleadings to a less stringent standard than formal pleadings drafted by lawyers. *McBride v. Deer*, 240 F.3d 1287, 1290 (10th Cir. 2001); *accord Shaffer v. Saffle*, 148 F.3d 1180, 1181 (citing *Hall v. Bellmon*, 935 F.2d 1106,

---

[5] In their briefings for the Court, both parties have relied upon materials outside of the pleadings and attached exhibits attached. However, the Court will not convert the motion into one for summary judgment and thus will not consider such extraneous materials.

1110 (10th Cir. 1991)).  The liberal construction of the plaintiff's complaint, however,

"does not relieve the plaintiff of the burden of alleging sufficient facts on which a

recognized legal claim could be based."  *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th

Cir. 1996) (quoting *Hall*, 935 F.2d at 1110).  "Conclusory allegations without supporting

factual averments are insufficient to state a claim on which relief can be based."  *Id.*

(quoting Hall, 935 F.2d at 1110).  Moreover, the Court does not assume the role of

advocate for a *pro se* litigant.


2.  Analysis

    Keeping in mind its obligation to construe Mr. Shaw's *pro se* pleadings liberally,

the Court finds that Mr. Shaw asserts the following claims under *Bivens*: (1) violations of

the Eighth Amendment, based upon excessive force on August 9th, 2009, and an alleged

denial of adequate medical treatment from the resultant injuries, and (2) a violation of the

First and Fourteenth Amendment stemming from his treatment during the detention

hearing on August 27th, 2008.[6]  Mr. Shaw purports to allege these constitutional

violations pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of*

_____

[6] In the "Response to Defendants' Memorandum and Brief in Support of Defendants'
Motion to Dismiss," Mr. Shaw appears to make an additional claim that the defendants
engaged in a "conspiracy" to cover up their unlawful actions.  However, Mr. Shaw has
not sought to amend his complaint, the operative document for purposes of assessing his
claims.  In resolving the present motions, the Court will not consider any claims not
contained within the complaint itself.  *See Regal Ware, Inc. v. Vita Craft Corp.*, 653
F.Supp.2d 1146, 1150 (D. Kan. 2006) ("[r]egardless of the parties' allegations in other
documents, in deciding this motion 'we do not consider those materials'") (quoting
*Moffett v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1231 n. 3 (10th Cir. 2002)).

*Narcotics,* 403 U.S. 388 (1971) as well as 42 U.S.C. § 1983.[7]  In his prayer for relief, he

also requested damages as against Mr. Zilmer, Mr. Bagby and Mr. Quinn for "emotional

and mental stress," which the Court construes as a claim for intentional or negligent

infliction of emotional distress.

a.  Section 1983

Although Mr. Shaw seemingly contends that his claims arise under 42 U.S.C. §

1983 as well as under *Bivens*, he does not assert that the defendants acted under color of

state law.  "'Under Section 1983, a private individual's conduct constitutes state action

only if it is 'fairly attributable' to the state.'  *Lindsey v. Bowlin ("Lindsey II")*, 557

F.Sup.2d 1225, 1231 n. 14 (D. Kan. 2008) (quoting *Pino v. Higgs*, 75 F.3d 1461, 1465

(10th Cir. 1996)).  "Conduct is 'fairly attributable' to the state if (1) the deprivation is

caused by the exercise of some right or privilege created by the state or by a rule of

conduct imposed by the state; and (2) the private party acted together with or obtained

significant aid from state officials or engaged in conduct otherwise chargeable to the

state."  *Id*.  Mr. Shaw alleges that the defendants acted under color of *federal* law but

does not claim that the defendants engaged in conduct that could be considered "fairly

attributable" to the state.  Thus, § 1983 is an inappropriate mechanism for Mr. Shaw to

_____

[7] In his complaint, Mr. Shaw states that he invokes jurisdiction pursuant to Bivens, but
also lists additional § 1983 cases.  Moreover, he quoted § 1983 in his response to the
Motion to Dismiss.  The Court therefore presumes that Mr. Shaw seeks to assert his
claims under § 1983 as well.

assert his claims, and the Court grants the defendants' Motion as relates to the § 1983 claims.

b. *Bivens*

In their Motion to Dismiss, the defendants raise several issues in connection with Mr. Shaw's *Bivens* claims. First, they assert that Mr. Shaw has failed to state a cause of action under *Bivens* because a plaintiff should not be able to assert *Bivens* claims against employees of privately operated prisons, citing to the Supreme Court's decision in *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 72-73, 122 S.Ct. 515, 522 (2001). Second, the defendants contend that Mr. Shaw did not timely file his grievances and that his claims are therefore precluded by his failure to *properly* exhaust administrative remedies. Lastly, even if the Court did permit *Bivens* claims to be asserted against employees of a privately operated prison, the defendants argue that Mr. Shaw has failed to state any constitutional claim upon which relief might be granted. In considering these claims, the Court separately addresses each alleged incident, and the corresponding constitutional claims, as the applicability of the defendants' arguments hinge upon the constitutional claims asserted.[8]

---

[8] The Court notes that Mr. Shaw's complaint does not clearly indicate whether he attempted to sue the defendants in their official or individual capacities. In the section of his complaint addressing how the defendants acted under color of federal law, Mr. Shaw alleged that each defendant was responsible in his or her official capacity. A *Bivens* suit is brought to redress constitutional violations "committed by a federal officer in his official capacity," *United States v. Cusumano*, 67 F.3d 1497, 1514 (10th Cir. 1995), *vacated on other grounds on rehearing en banc*, but is brought against the defendant in his or her individual capacity. *See Farmer v. Perrill*, 275 F.3d 958, 963 (10th Cir. 2001)

9

1. *Bivens* Claims Against Employees of Privately Operated Prisons

Mr. Shaw contends that the conduct of Jeff Zilmer, Joshua Bagby and Donald Quinn on August 9th, 2008, and a subsequent denial of appropriate medical care, constituted cruel and unusual punishment in violation of the Eighth Amendment.[9] Mr. Shaw also asserts that his First and Fourteenth Amendment rights were violated in connection with the disciplinary hearing conducted on August 27th, 2008, because he was not permitted to question witnesses, it was brought to the attention of Disciplinary Officer Monroe that there were conflicting and false statements[10] made by prison employees concerning the events on August 9th, and he was nonetheless found guilty of the offense of "hindering," his staff advisor Mr. Daniels did not use the statement Mr. Shaw had

---

("[t]here is no such animal as a *Bivens* suit against a public official…in his or her official capacity.") *See also Romero v. Peterson*, 930 F.2d 1502, 1505 (10th Cir. 1991). To the extent that an action against employees of a privately operated prison might differ, the Supreme Court's pronouncement in *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 122 S.Ct. 515, 522 (2001) is relevant. There, the Court concluded that a *Bivens* action may not be brought against a private corporation operating a halfway house pursuant to a contract with the Bureau of Prisons. *Id.* at 72-73. Thus, a *Bivens* suit brought against the employees must likewise be brought against them in their individual capacities.

[9] Mr. Shaw repeated his allegation of insufficient medical treatment in a separate portion of his complaint, without specifying the constitutional amendment implicated. However, a claim of inadequate medical treatment during incarceration is appropriately brought under the Eighth Amendment for convicted prisoners, and the due process clause for pre-trial detainees, *see Martinez v. Beggs,* 563 F.3d 1082, 1088 (10th Cir. 2009), *cert. denied*, 130 S.Ct. 259, 175 L.Ed.2d 131 (2009), and the Court will consequently address it as such.

[10] Mr. Shaw did not clearly allege in the complaint itself that his due process rights were violated by the Disciplinary Officer's use of false statements in assessing his guilt. However, exhibits attached to the complaint indicated that he sought to assert such a claim, and the Court recognizes that it has an obligation to construe his *pro se* pleadings liberally.

given at the disciplinary hearing, and he was not permitted an opportunity "to show that [he] had done nothing wrong. The defendants contend that these constitutional claims may not be asserted against employees of privately operated prisons under *Bivens*, owing to the existence of an alternative state law remedy.

In *Malesko*, the Supreme Court concluded that the plaintiff could not sue a private corporation operating a halfway house pursuant to a contract with the Bureau of Prisons for alleged Eighth Amendment violations.[11]  In holding that *Bivens* should not be extended to claims against such a private entity, the Court reasoned in part that the plaintiff had alternative remedies available under state law and that the Court had long been cautious about extending *Bivens* to any new contexts.  *Malesko*, 534 U.S. at 66, 72-74.  The Court noted that it had extended *Bivens* only twice, "to provide an otherwise nonexistent cause of action against *individual officers* alleged to have acted unconstitutionally, or to provide a cause of action for a plaintiff who lacked *any alternative remedy* for harms caused by an individual officer's unconstitutional conduct." *Id*. at 70.

In 2004, Judge Kathryn Vratil concluded that a *Bivens* action should not be implied against individual employees of CCA where the plaintiff has an alternative negligence action under state law.  *See Peoples v. Corr. Corp. of Am.* ("Peoples I"), 2004 WL 74317, at *7 (D. Kan. Jan. 15, 2004), *aff'd,* 422 F.3d 1090 (10th Cir. 2005), *rev'd en*

---

[11]  The Supreme Court did not address whether a *Bivens* action might be implied against employees of a privately operated prison.

*banc*, 449 F.3d 1097 (10ᵗʰ Cir. 2006), *cert. denied*, 549 U.S. 1056, 127 S.Ct. 664, 166 L.Ed.2d 521 (2006).[12]  A Tenth Circuit panel agreed, holding that a *Bivens* action should not be permitted as against employees of a privately operated prison where an alternative cause of action exists under federal or state law.  *See Peoples v. CCA Det. Ctrs.* ("*Peoples III*"), 422 F.3d 1090, 1103 (10ᵗʰ Cir. 2005), *aff'd in part, rev'd in part, vacated by an equally divided court in part*, 449 F.3d 1097 (10ᵗʰ Cir. 2006), *cert. denied*, 549 U.S. 1056, 127 S.Ct. 664, 687, 166 L.Ed.2d 521 (2006).  However, the Tenth Circuit reheard the case *en banc*, and evenly divided on the question of whether a *Bivens* action should be implied in such a situation.[13]  *Peoples v. CCA Det. Ctrs.* ("*Peoples IV*"), 449 F.3d 1097, 1099 (10ᵗʰ Cir. 2006) (*en banc*) (*per curiam*), *cert. denied*, 549 U.S. 1056, 127 S.Ct. 664, 687, 166 L.E d.2d 521 (2006).  The Tenth Circuit vacated the portion of the panel opinion in *Peoples III* addressing the matter, and the panel opinion now lacks precedential value. *Id*.  Since the *en banc* decision, Judge Vratil has again weighed in on the issue, concluding in *Lindsey v. Bowlin* that "a federal prisoner has no implied right of damages against an employee of a privately operated prison when state or federal law affords an

---

[12] In a related case, Judge Murguia noted in dicta that it was unlikely under existing Supreme Court precedent that a plaintiff could assert a *Bivens* action against employees of CCA where alternative state remedies were available, but the Judge did not resolve the matter, instead dismissing the action for failure to state a claim upon which relief could be granted.  *See Peoples v. Corr. Corp. of Am.* ("*Peoples II*"), 2004 WL 2278667, at *4-7 (D. Kan. March 26, 2004), *aff'd*, 422 F.3d 1090 (10ᵗʰ Cir. 2005), *rev'd en banc*, 449 F.3d 1097 (10ᵗʰ Cir. 2006), *cert. denied*, 549 U.S. 1056, 127 S.Ct. 664, 166 L.Ed.2d 521 (2006).
[13] Judge Vratil had concluded that the district court lacked subject matter jurisdiction over such a claim, *Peoples I*, 2004 WL 74317, at *7, but the Tenth Circuit sitting *in banc* determined that a court does have jurisdiction.  *Peoples IV*, 449 F.3d at 1099.

alternative cause of action for the alleged injury."  *Lindsey v. Bowlin ("Lindsey II")*, 557 F.Supp.2d 1225, 1230 (D. Kan. 2008).[14]

Despite the well-reasoned opinions of Judge Vratil in *Peoples I* and *Lindsey II*, and of the Tenth Circuit panel majority in *Peoples III*, this Court concludes that an inmate should be permitted to assert a *Bivens* claim against individual employees of a privately operated prison, in the same manner that a prisoner in a facility operated by the Bureau of Prisons would be permitted to assert such claims against federal prison officials.  *Peoples I* and *III* and *Lindsey II* relied heavily upon the following language from the Supreme Court's decision in *Malesko*:

> In 30 years of *Bivens* jurisprudence, the Court has extended its holding only twice, to provide an otherwise nonexistent cause of action against *individual officers* alleged to have acted unconstitutionally [e.g., *Carlson*], and to provide a cause of action for a plaintiff who lacked *any alternative remedy* for harms caused by an individual officer's unconstitutional conduct [e.g., *Davis*].  Where such circumstances are not present, the Court has consistently rejected invitations to extend *Bivens*, often for reasons that foreclose its extension here.

*Malesko*, 534 U.S. at 70, 122 S.Ct. 515.  Based upon this language, the courts concluded that *Malesko* prevents the assertion of any *Bivens* claim where the plaintiff has an alternative remedy available, under state or federal law.[15]  As the *Peoples III* majority

---

[14] In *Lindsey II*, the defendant asserted in a conclusory fashion that a state law negligence action was available, and Judge Vratil therefore concluded that the defendant had not shown the plaintiff had alternative state law causes of action available.  *Lindsey II*, 557 F.Supp.2d at 1231.

[15] Two other circuit courts have also refused to extend *Bivens* to claims against employees of privately operated prisons where state or federal law provides an alternative

stated: "[a]n alternative cause of action for damages against an individual defendant eliminates either of those two circumstances, and therefore *Bivens* and its limited progeny do not apply in such a case." *Peoples III*, 422 F.3d at 1101. See also *Peoples I*, 2004 WL 74317, at *7. However, as Judge Ebel noted in dissent in *Peoples III*, "*Bivens*, after all, is a *remedy* implied for a *constitutional* violation" and a "state tort cause of action" therefore "is not an adequate alternative remedy for a constitutional violation." *Peoples III*, 422 F.3d at 1109 (Ebel, J. dissenting). Indeed, in *Carlson v. Green*, 446 U.S. 14, 100 S.Ct. 1468 64 L.Ed.2d 15 (1980), the Supreme Court implied a *Bivens* remedy for an Eighth Amendment violation regardless of the fact that the plaintiff could have brought an action against the United States under the Federal Tort Claims Act ("FTCA") or asserted a state-law tort claim against the individual officers. *See Peoples III*, 422 F.3d at 1109 (Ebel, J. dissenting) (noting that a state-law claim could have been asserted in Carlson because a remedy is available under the FTCA only where a private person would be liable under state law). Even the remedy provided by *Bivens* was predicated in part upon a desire to eradicate state-by-state variances in the availability of remedies for constitutional violations. *See Sarro v. Cornell Corr., Inc.*, 248 F.Supp.2d 52, 63 (noting that *Bivens* indicated "remedies for constitutional violations should not depend on the law of the state in which the violation occurred"). However, permitting an inmate at a privately operated prison to assert *Bivens* claims only where an adequate state law

remedy, reasoning that the Supreme Court would not extend *Bivens* liability in such a situation. *See Alba v. Montford*, 517 F.3d 1249, 1252-55 (11th Cir. 2008); *Holly v. Scott*, 434 F.3d 287, 295-97 (4th Cir.).

remedy exists "would require a case-by-case analysis of state law and would cause the availability of a *Bivens* remedy to vary according to the state in which the institution is located." *Id. See also Peoples III*, 422 F.3d at 1112 (Ebel, J. dissenting) ("Non-uniform rules of liability, such as the majority embraces today, do little to protect constitutional rights and may undermine the settled expectations of prisoners and prison guards, who may be transferred among different privately-run federal prison facilities located in different states.") Moreover, not permitting a *Bivens* action against employees of a privately operated prison would deny the prisoner at the privately-operated facility a right to assert a claim that could be asserted by a prisoner at a government-operated prison, as a prisoner at a federal prison could still bring a *Bivens* claim against individual prison officials. *Sarro,* 248 F.Supp.2d at 63. Under the majority's holding in *Peoples III*, an action under 42 U.S.C. § 1983 could also be brought against individual prison officials at a state prison, but a *Bivens* action not be brought against a similar official by a federal prisoner at a privately operated facility. To promote federal-state as well as public-private uniformity, a *Bivens* action should be permitted against individual employees at privately run facilities. *Peoples III*, 422 F.3d at 1112 (Ebel, J. dissenting). The Court is additionally persuaded by Judge Ebel's reasoning in *Peoples III* that *Malesko* "clearly assumed the availability of [a *Biven's*] remedy against the employees" of a privately operating prison. *Id*. at 1110 (citing *Malesko*, 534 U.S. at 72, 79 n. 6). For all of these reasons, the Court concludes that a plaintiff should be permitted to assert *Bivens* claims

against employees of a privately operated prison entity. Mr. Shaw therefore may

properly bring *Bivens* claims against the individual employees of CCA.[16]

1. Exhaustion of Administrative Remedies

      The individual CCA defendants assert that Mr. Shaw's claims must be dismissed

because he failed to exhaust administrative remedies. Under the Prison Litigation

Reform Act ("PLRA"), a federal prisoner must exhaust available administrative remedies

prior to bringing a lawsuit challenging prison conditions. 42 U.S.C. § 1997(e)(a).

"[U]nexhausted claims cannot be brought in court," *Jones v. Bock*, 549 U.S. 199, 211,

127 S.Ct. 910, 166 L.Ed.2d 798 (2007), and exhaustion must occur even if the prisoner

seeks only monetary damages. *Booth v. Churner*, 532 U.S. 731, 741, 121 S.Ct. 1819, 149

L.Ed.2d 958 (2001). The procedural requirements set out by the prison determine

whether a prisoner has properly exhausted his administrative remedies; therefore, "an

inmate may only exhaust by properly following all of the steps laid out in the prison

system's grievance procedure." *Little v. Jones*, 607 F.3d 1245, 2010 WL 2267816, at *3

(10th Cir. June 8, 2010). To properly exhaust all administrative remedies, the prisoner

---

[16] The defendants did not cite to any authority that Kansas law would provide alternative remedies as to each of Mr. Shaw's constitutional claims. Indeed, even if the Court followed the majority holding of *Peoples III* and held that Mr. Shaw could not assert *Bivens* claims against the CCA employees where state or federal law provided alternative remedies, the Court would still permit Mr. Shaw to assert his *Bivens* claims regarding the disciplinary hearing, because the defendants have not directed the Court to any authority that Kansas law would provide an alternative remedy for Mr. Shaw's due process and first amendment claims.

must comply with filing deadlines.  *McNeil v. Howard*, 348 Fed. App'x 409, 411 (10th

Cir. Oct. 9, 2009) (citing *Woodford v. Ngo*, 548 U.S. 81, 90, 126 S.Ct. 2378, 165 L.Ed.2d

368 (2006) (exhaustion requires "using all steps that the agency holds out, and doing so

properly")).  "[F]ailure to exhaust is an affirmative defense under the PLRA," *Jones v.*

*Bock*, 549 U.S. at 216, and the individual CCA defendants therefore have the burden of

establishing that Mr. Shaw failed to exhaust available administrative remedies.  *Roberts*

*v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007).

According to the defendants, Mr. Shaw submitted two informal resolutions on

September 2, 2008, one grieving the alleged excessive use of force on August 9th, and the

other grieving the disciplinary hearing.  CCA's Inmate Grievance Procedure provides for

a two-step process.  First, the inmate must submit an informal resolution form within

seven (7) calendar days of the incident.  After receiving the response, the prisoner has

five (5) calendar days to submit a formal grievance to the Grievance Officer.  The

defendants assert that Mr. Shaw's submission of the informal grievance forms on

September 2, 2008 was untimely, as it was submitted well beyond seven days after the

incident occurred on August 9th.  Accordingly, the defendants argue that Mr. Shaw failed

to properly comply with all exhaustion requirements.

Mr. Shaw does not contest that he did not timely submit an informal grievance

concerning the August 9th incident.  Mr. Shaw contends, however, that he was prevented

by prison officials from properly exhausting his claims.  He has provided the Court with

various statements to this effect.  First, in his complaint, Mr. Shaw stated that the

informal resolutions he filed "came up missing," although he failed to provide any evidence to support this assertion. Indeed, it is unclear whether he refers to informal resolutions filed before the one on September 2nd. Afterwards, he stated that the grievance officer explained the situation to him, and that the grievances were returned to him on the grounds that the disciplinary action taken was not a grievable matter. Then, in his response to the defendant's Motion to Dismiss, Mr. Shaw asserted that he could not exhaust administrative remedies because the defendants intentionally and knowingly sabotaged the administrative remedies, although he again provided no further explanation or any basis for this allegation. In his Motion for Summary Judgment, Mr. Shaw asserted that grievances were not returned or answered, although the allegations in the complaint and the documentation he attached to his complaint directly contradict this assertion. For example, he concedes that the grievance officer explained the situation to him, and that CCA officials returned the grievances he submitted on September 2nd with an explanation that the disciplinary action taken was not a "grievable matter." Finally, in a supplemental document submitted with the Court, entitled "Memorandum and Statements of the Law on the Issues of Law and Fact Raised in Plaintiff's Complaint for the Court's Consideration," (doc. #50) Mr. Shaw stated that he made every attempt to exhaust administrative remedies, but was hindered in doing so "by the defendants who control the outcome of administrative relief to protect fellow officers." Exhaustion is required only of *available* administrative remedies, *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002), and the Tenth Circuit has explained that "[w]here prison officials

prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy 'unavailable' and a court will excuse the prisoner's failure to exhaust." *Little v. Jones*, 2010 WL 2267816, at \*4 (citing *Lyon v. Vande Krol*, 305 F.3d 806, 808 (8th Cir. 2002)). However, Mr. Shaw has failed to provide the Court with any basis for his contention that prison officials thwarted his efforts to exhaust. For example, Mr. Shaw did not even assert that he drafted or submitted an informal grievance concerning the August 9th incident within the deadlines established by CCA policy. The Court concludes that Mr. Shaw's baseless assertions that the prison officials sabotaged his attempts to exhaust administrative remedies are insufficient to render the administrative remedies "unavailable." *See Johnson v. Wackenhut Corr. Corp.*, 130 Fed. App'x 947, 951 (10th Cir. 2005) (unpublished) (affirming a dismissal for failure to exhaust administrative remedies where the prisoner alleged that the prison officials prevented his attempts to exhaust, but there was no evidence that "he ever requested a grievance form or otherwise requested assistance with the grievance process."). Thus, as pled, the Court would agree that Mr. Shaw has not shown he was hindered in properly exhausting his administrative remedies. However, the Court will grant Mr. Shaw leave to amend his pleadings to allege any existing facts supporting his contention that the prison officials hindered his efforts to exhaust his excessive force claim.[17]

---

[17] The defendants have not specifically asserted that Mr. Shaw failed to exhaust administrative remedies with regard to the medical treatment claim, and the documentation that Mr. Shaw attached to his complaint does not indicate that he filed any grievance concerning his medical treatment. Moreover, given that the Court is compelled

However, the Court finds that the defendants have not satisfied their burden of demonstrating that Mr. Shaw failed to exhaust his due process claim concerning the disciplinary hearing.[18]  As noted above, Mr. Shaw submitted an informal resolution concerning the alleged constitutional violations surrounding the disciplinary hearing on September 2, 2008.  If the disciplinary hearing occurred on August 27th, Mr. Shaw submitted the informal resolution concerning these claims within the seven day deadline.  According to the defendants, CCA policy provides that disciplinary actions are not grievable matters, as the grievance policy specifically provides that "disciplinary action must be addressed in accordance with disciplinary procedures in place at the facility."  Indeed, Mr. Shaw was notified that disciplinary hearings are not grievable matters, in accordance with this policy.  However, in the informal resolution submitted on September 2nd, Mr. Shaw clearly stated that he believed his due process rights had been violated by Disciplinary Officer Monroe, as he was not permitted to have witnesses or have witnesses questioned by Staff Advisor Daniels.[19]  Although the disciplinary action

---

to look only to the pleadings and attached exhibits, the Court concludes that Mr. Shaw has adequately pled an Eighth Amendment claim for relief based upon a denial of medical treatment.  This is discussed in greater detail below.

[18] As with the claim for a denial of medical treatment under the Eighth Amendment, the defendants do not specifically assert that Mr. Shaw failed to exhaust administrative remedies with regard to his First Amendment claim, relating to the disciplinary hearing.  Moreover, the documents attached to the complaint do not indicate that Mr. Shaw raised a claim under the First Amendment with CCA during the grievance process.  However, the Court finds that Mr. Shaw has not adequately pled a First Amendment claim and thus finds dismissal appropriate on that basis.  However, Mr. Shaw is granted leave to amend his pleadings to clarify his First Amendment claim, and the defendants might choose to reassert their exhaustion arguments at that time.

[19] Plaintiff attached a copy of the informal resolution to the complaint as "exhibit H."

itself was not a grievable matter, Mr. Shaw did not merely object to the outcome of the disciplinary process, but also complained of a violation of his due process rights in the course of the disciplinary proceeding. Pursuant to CCA grievance procedures, Mr. Shaw had a right to file a grievance concerning the alleged violation of his constitutional rights, and the defendants have not asserted that Mr. Shaw improperly or untimely filed his grievance concerning the due process violations during the disciplinary hearing. Thus, the Court concludes that the defendants have not satisfied their burden of proof to establish that Mr. Shaw failed to exhaust available administrative remedies as to the due process claim. The Court therefore turns to address the final argument made by defendants concerning whether Mr. Shaw adequately alleged constitutional violations to survive a motion to dismiss.

2. Failure to State a Claim

a. Denial of Medical Treatment under the Eighth Amendment

The CCA defendants assert that Mr. Shaw's allegations concerning the denial of medical treatment after the incident on August 9th fail to state any constitutional claim under the Eighth Amendment. In support of his claim that he was denied appropriate medical care, Mr. Shaw stated:

> "On 8-9-08 plaintiff received cuts and bruises on his hands and ankles from very tight handcuffs and shackles, he received bruises to his face and knots on his head from having his head slammed against the floor and being punched by officer Jeff Zilmer and having chemicals used on him. Plaintiff was not given a proper

shower and did not see medical until 8-10-08 after 5 pm after numerous complaints."

The defendants argue that Mr. Shaw has failed to state a claim for relief based upon various extraneous documents attached to the Motion to Dismiss, but not attached to the pleadings. As this Court is considering only the pleadings and attached exhibits, since the defendants moved to dismiss rather than for summary judgment, and because the Court must accept as true all facts alleged in the complaint, the Court finds that the defendant has adequately stated a claim for relief. *See Estate of Hocker v. Walsh*, 22 F.3d 995, 998 (10th Cir. 1994) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)) (explaining that there exists a claim for inadequate medical attention only where the plaintiff shows "deliberate indifference to serious medical needs.") *See also Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993) ("Delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference which results in substantial harm.")

b. Disciplinary Hearing Claims

The CCA defendants also contend that the allegations contained in Mr. Shaw's complaint concerning the disciplinary hearing process fail to state any claim under the First or Fourteenth Amendments. As to the alleged violation of due process under the Fourteenth Amendment, the defendants contend that Mr. Shaw was not denied due

process because he was assigned a staff advisor, despite the fact that he had no right to representation, he was permitted to make arguments, and he was able to review witness statements. However, while an inmate subject to a disciplinary hearing is not entitled to the "full panoply of rights" due a defendant in a criminal prosecution, *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the Supreme Court has concluded that due process requires an inmate receive "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *See Superintendent*, *Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454, 105 S.Ct 2768, 86 L.Ed.2d 356 (1985) (citing *Wolff*, 418 U.S. at 563-67). The defendants correctly point out that the Supreme Court cautioned that discretion as to the calling of witnesses would still be necessary, since the "unrestricted right to call witnesses from the prison population carries obvious potential for disruption and for interference with the swift punishment that in individual cases may be essential to carrying out the correctional program of the institution." *Wolff*, 418 U.S. at 566. However, Mr. Shaw did not assert that he sought to call *other inmates* as witnesses, and exhibits Mr. Shaw attached to his complaint indeed indicate that he sought to call and question other prison employees. *See* Plaintiff's Exhibit F, "CCA Inmate/Resident Disciplinary Report." Regardless, accepting all facts alleged as true, and viewing all reasonable inferences in the plaintiff's favor, Mr. Shaw's complaint alleges sufficient

facts to state a claim for relief that "is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 570. Consequently, the Court denies the defendants' Motion to Dismiss as to the due process claim stemming from the disciplinary hearing.

However, the Court finds that Mr. Shaw's allegations concerning the violation of his first amendment rights during the disciplinary hearing are insufficient to state a claim for relief that is plausible on its face. In the complaint, Mr. Shaw states that his first and fourteenth amendment rights were violated, then provides as "supporting facts" the following:

> "That on Aug 27, 2008 I requested to have witnesses questioned and it was brung to the disciplinary officers attention that there were conflicting statements, false accusations and plaintiff's statement was not used in his defense by staff advisor caseworker Daniels during a hearing and this was after the violation was suppose to be investigated. I was still not allowed witnesses or a chance to show that I had done nothing wrong."

Mr. Shaw does not state which of his first amendment rights he believed was violated, how he believes it was violated, nor who he believes violated it. However, as Mr. Shaw is being given an opportunity to amend his pleadings to clarify how prison officials hindered him in exhausting his administrative remedies, the Court likewise finds that Mr. Shaw may amend his complaint to clarify the First Amendment claim he seeks to assert.

c. Infliction of Emotional Distress

In the prayer for relief, Mr. Shaw also requested $500,000 from each of the following defendants: Jeff Zilmer, Joshua Bagby, and Donald Quinn. The defendants argue that Mr. Shaw has failed to state any claim for relief for infliction of emotional

distress.  To the extent that Mr. Shaw is merely seeking damages as against these individuals, his request for damages still remains.[20]  However, to the extent that Mr. Shaw seeks to assert a claim for either intentional or negligent infliction of emotional distress, the Court agrees that Mr. Shaw's allegations are insufficient to state a claim for relief.

To establish intentional infliction of emotional distress, the plaintiff must demonstrate: "(1) The conduct of the defendant was intentional or in reckless disregard of the plaintiff; (2) the conduct was extreme and outrageous; (3) there was a causal connection between the defendant's conduct and the plaintiff's mental distress; and (4) the plaintiff's mental distress was extreme and severe."  *Valadez v. Emmis Commc'ns*, 229 P.3d 389, 394 (Kan. 2010) (citing *Taiwo v. Vu*, 249 Kan. 585, 592, 822 P.2d 1024 (1991)).  The Court must assess "(1) Whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery; and (2) whether the emotional distress suffered by plaintiff is in such extreme degree the law must intervene because the distress inflicted is so severe that no reasonable person should be expected to endure it."  *Id*. (citing *Roberts v. Saylor*, 230 Kan. 289, 292-93 637 P.2d 1175 (1981)).  "In order to provide a sufficient basis for an action to recover for emotional distress, conduct must be outrageous to the point that it goes beyond the bounds of decency and is utterly intolerable in a civilized society."  *Id*. (citing *Taiwo*, 249 Kan. at 592-93, 822 P.2d

---

[20] As explained in greater detail below, Jeff Zilmer and Joshua Bagby have failed to respond to the plaintiff's complaint in any fashion, and the Court therefore grants Mr. Shaw a default judgment as against these individuals.

1024).  Regardless of whether Mr. Shaw's complaint may contain facts to support a

conclusion that the particular defendants acted outrageously, the Court finds that Mr.

Shaw has not alleged any facts to indicate that he suffered severe emotional distress from

their conduct on August 9th.  Thus, the Court agrees with the defendants that Mr. Shaw

has not stated a claim for relief for intentional infliction of emotional distress.  However,

the Court will afford Mr. Shaw the opportunity to allege such facts if they exist.

Likewise, Mr. Shaw's pleadings presently fail to demonstrate any right to relief for

negligent infliction of emotional distress.  Under Kansas law, a plaintiff may recover for

negligent infliction of emotional distress only where the plaintiff can establish a physical

injury.  *Lovitt ex rel. Bahr v. Bd. of County Comm'rs of Shawnee County*, 221 P.3d 107,

114 (Kan.App. 2009) ("The current state of Kansas law is that a plaintiff claiming

damages for the negligent infliction of emotional distress must demonstrate a physical

injury or a physical impact which causes an actual injury.")  Mr. Shaw has failed to allege

such a physical injury, or any facts that would indicate to the Court that he suffered from

such an injury.  Thus, the Court likewise concludes that Mr. Shaw has not adequately

pled a claim for negligent infliction of emotional distress.


B.  Motion for Summary Judgment

Mr. Shaw moves for summary judgment or, in the alternative, for judgment as a

matter of law under Fed.R.Civ.P. 56.  Fed.R.Civ.P. 56 is the federal rule permitting a

district court to enter summary judgment, and the Court will therefore assess these two requests as one consolidated motion for summary judgment.

1. Standards

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Burke v. Utah Transit Auth. & Local* 382, 462 F.3d 1253, 1258 (10th Cir. 2006). An issue of fact is "genuine" if "the evidence allows a reasonable jury to resolve the issue either way." *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006). A fact is "material" when "it is essential to the proper disposition of the claim." *Id.*

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* (citing *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548).

If the movant carries this initial burden, the nonmovant may not simply rest upon his or her pleadings but must "bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which he or she carries the burden of proof." *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). To accomplish this, sufficient evidence pertinent to the material issue "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 675 (10th Cir. 2002).

2. Analysis

In various documents submitted to the Court, as well as the Motion for Summary Judgment, Mr. Shaw argues that there exist "genuine issues" of "material fact," and requests that the Court enter judgment as a matter of law on his claims. As explained above, however, judgment as a matter of law is appropriate only where there exist *no* genuine issues of material fact for resolution at trial. *See Thom v. Bristol-Myers Squibb Co.*, 353 F.3d at 851 (citing *Celotex Corp.*, 477 U.S. at 322-23). To the extent that Mr. Shaw's claims survive the defendants' Motion to Dismiss, the Court denies Mr. Shaw judgment as a matter of law under Fed.R.Civ.P. 56.

C. Motion for Default Judgment

Mr. Shaw requests that this Court enter a default judgment against defendants Jeff Grimes, Jeff Zilmer, Joshua Bagby, and Evan Herken, as they were served on February

23rd, 2010 and have yet to respond. Fed.R.Civ.P. 55(a) allows an entry of default against a party when that party has "failed to plead or otherwise defend" itself. Following entry of default by the clerk, Fed.R.Civ.P. 55(b)(2) permits a district court to enter default judgment. On April 30th, 2010, the clerk of the court entered default against these defendants (doc. #44). Thus, Mr. Shaw is entitled to a default judgment against defendants Jeff Grimes, Jeff Zilmer, Joshua Bagby, and Evan Herken.

Once default is entered, as it has been in this case, a defendant is deemed to have admitted the plaintiff's well-pleaded allegations of fact. *Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1125 (10th Cir. 2003). However, Rule 55(b)(2), governing the entry of default judgment by the court, provides: "[t]he court may conduct hearings or make referrals-preserving any federal statutory right to a jury trial-when, to enter or effectuate judgment, it needs to:

(A) conduct an accounting;

(B) determine the amount of damages;

(C) establish the truth of any allegation by evidence; or

(D) investigate any other matter

Fed.R.Civ.P. 55(b)(2).

Under Rule 55(b)(1), "[i]f the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk-on the plaintiff's request, with an affidavit

showing the amount due-must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing." To be a "sum certain" there must be no doubt as to the amount that must be awarded. *Franchise Holding II, LLC v. Huntington Rests. Group, Inc.*, 375 F.3d 922, 92829 (9th Cir. 2004). Thus, "a court may enter a default judgment without a hearing only if the amount claimed is a liquidated sum or one capable of mathematical calculation." *Hunt v. Inter-Globe Energy, Inc.*, 770 F.2d 145, 148 (10th Cir. 1985) (citing *Venable v. Haislip*, 721 F.2d 297, 300 (10th Cir. 1983)).

The inquiry does not end, however, just because a plaintiff requests a specific amount in its complaint. *Tebbets v. Price Sec.,* 1995 WL 28967, at *3 (D. Kan Jan. 20, 1995). "'A plaintiff cannot satisfy the certain requirement simply by requesting a specific amount. He or she must also establish that the amount requested is reasonable under the circumstances.'" *Id.* (quoting *Beck v. Atl. Contracting Co*., 157 F.R.D. 61, 65 (D. Kan 1994)). 'Damages may be awarded only if the record adequately reflects the basis for award via a hearing or a demonstration by default affidavits establishing the necessary facts.'" *Id.* at *4 (quoting *Adolph Coors Co. v. Movement Against Racism & The Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) (internal quotations omitted)).

Mr. Shaw seeks compensatory damages in the amount of $20,000,000, as well as $10,000,000 for pain and suffering and $20,000,000 in punitive damages. He also requests $500,000 for emotional and mental distress against each of the following individual defendants: Jeff Zilmer, Joshua Bagby, and Donald Quinn. Mr. Shaw additionally requests nominal damages. As the record does not clearly support these

damages, the Court must hold an evidentiary hearing to determine the appropriate award of damages.

**IT IS THEREFORE ORDERED BY THE COURT** that the Motion to Dismiss filed by defendants Shelton Richardson, Robert Mundt, Ken Daugherty, Bruce Roberts, Kristen Monroe, Anthony Reutlinger, Rhonda Allen, and Donald Quinn is granted in part and denied in part for the reasons set forth in this opinion. However, Mr. Shaw is granted leave to amend his pleadings to assert any additional, existing facts he may have in support of his claims the Court finds inadequately pled. Mr. Shaw's Motion for Summary Judgment is denied. It is further ordered that the magistrate judge appoint counsel for Mr. Shaw. After counsel has been appointed and has had time to familiarize himself or herself with the case, the magistrate judge will set the date for the hearing on Mr. Shaw's Motion for Default Judgment, as well as the date by which Mr. Shaw must file his amended complaint.

**IT IS SO ORDERED**.

Dated this 19th day of July, 2010, in Kansas City, Kansas.

s/ John W. Lungstrum

John W. Lungstrum

United States District Judge